Agnes, A.J.
INTRODUCTION
The defendant is charged with possession with intent to distribute marijuana in violation of G.L.c. 94C, §32C(a). The defendanthas filed a pretrial motion to suppress evidence. Based on the credible evidence presented at the hearing on December 22, 2004, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
On the evening of March 13 or shortly after midnight on March 14, 2004, the defendant was operating a 1992 Toyota sedan on Interstate Route 84 in Sturbridge. Massachusetts State Police trooper Anthony Watson was on patrol at that time in a fixed position operating a stationary radar unit. Trooper Watson is a 3-year veteran of the Massachusetts State Police who has had training in the investigation and detection of narcotic drugs including training that exposed him to the smell of burnt marijuana. Trooper Watson’s field experience also exposed him to the odor of unbumt marijuana. There were no other vehicles on the road at the time. Trooper Watson made observations of the defendant’s vehicle that led him to conclude that it was traveling in excess of the posted speed limit. The radar measurement of the speed of the defendant’s vehicle was 71 m.p.h. The speed limit in the area is posted for a maximum of 65 m.p.h. As the defendant’s vehicle passed by Trooper Watson’s position, he noticed that a tail light was out. Trooper Watson pursued the defendant’s vehicle and pulled it over.
The defendant was the operator and sole occupant. The defendant said he didn’t know his light was out and apologized. He complied with trooper Watson’s request for his license and registration. Trooper Watson detected what appeared to him to be the odor of unburnt marijuana emanating from inside the vehicle. Trooper Watson noticed that the defendant was sweating even though it was a cold night. There was no evidence of drugs or dmg paraphernalia in sight. There was a cigar in the ashtray. He suspected the defendant was transporting marijuana. After checking the defendant’s license and registration, trooper Watson returned to the defendant’s vehicle and asked him if he had been smoking. The defendant replied that “I, I mean my friend, smoked earlier.”
The defendant was ordered out of the car and pat frisked. No contraband was detected. Trooper Watson entered the vehicle and searched the passenger compartment. He found no drugs or dmg paraphernalia, but he did detect that the marijuana odor, which was strong, appeared to be strongest in the rear adjacent to the trunk. Trooper Watson activated the interior latch causing the trunk to open. Inside the trank, trooper Watson detected an “overwhelming” odor of marijuana. He noticed a duffel-type bag about 2-3 feet by 2-3 feet, unzippered and covered with an opaque plastic trash bag. Inside the bag he found 43 plastic, zip-lock bags filled with a green herb-like substance which he believed to be marijuana. The bags bore different markings. The total weight was 20.63 pounds. The defendant was handcuffed and placed under arrest.
The defendant was advised of his Miranda rights by means of a card setting forth those rights which was read to him and by him (exhibit 1). The defendant acknowledged he understood his rights and signed the card. He told the police he was traveling from New York to Wayland, Massachusetts before he asked for a lawyer and further police questioning stopped. There was also testimony at the hearing from Mr. Richard Christopher, a retired state and federal narcotics officer with extensive experience in dmg investigations and evidence gathering methods. He opined in a credible way that the odor of raw marijuana diminishes as the marijuana ages, that the weather seal around the defendant’s truck was intact when he observed it, and that his inspection of the marijuana within the past several months and again in court at the hearing led him to describe its odor as detectible but not strong.
DISCUSSION
The police were justified in stopping the defendant’s vehicle for a speeding violation and based on a tail light that was not functioning properly. Commonwealth v. Baez, 47 Mass.App.Ct. 115, 117-18 (1999), and cases cited. Although the defendant’s nervousness was something that heightened trooper Watson’s suspicions, I do not mle that it played any significant role in the calculation of probable cause. The question thus arises whether the detection of a strong odor of unburnt marijuana provides probable cause for the search of a motor vehicle.
In two cases, the Appeals court, in dicta, has answered the question in the affirmative. In Baez, supra which turned on the defendant’s consent to a search, the Appeals Court indicated that the odor of marijuana, coupled with the defendant’s admission that he had smoked marijuana on a previous day, his nervousness, and some furtive movements in the vehicle *598 before the stop combined to supply probable cause. Baez, 47 Mass.App.Ct. at 118-19. In Commonwealth u. Kitchings, 40 Mass.App.Ct. 591 (1996), which turned on the justification for an investigative stop, the Appeals Court indicated agreement with the ruling by the trial judge that “the detection of a strong, fresh odor of burnt marijuana emerging from a motor vehicle provided probable cause to search the vehicle.” Id. at 596 n.8. As the Appeal Court noted in Kitchings, “[m]any jurisdictions have determined that the smell of marijuana alone provides probable cause to search an entire automobile. Id., citing numerous decisions to that effect. Courts in other jurisdictions have previously held that an officer with appropriate training is capable of detecting the odor of marijuana that is stored inside a vehicle’s trunk during a stop of the vehicle, and that such evidence provides the officer with probable cause to search the vehicle. See, e.g., United States v. Staula, 80 F.3d 596, 602-03 (1st Cir. 1996) (odor of burnt marijuana); People v. Faucett, 442 Mich. 153, 499 N.W.2d 764, 767 n.3 (1993) (raw or unburnt marijuana); State v. Sandoval, 92 N.M. 476, 590 P.2d 175 (Ct.App. 1979) (odor of raw marijuana in the trunk). See generally Annot, ”Validity of Warrantless Search of Motor Vehicle Based on Odor of Marijuana: State Cases," 114 ALR 5th 173 (2004).
It is important to distinguish this case from others in which the police detect a mild or faint odor of something they suspect may be raw or burnt marijuana and cases in which the quantity of the marijuana is so small that there is reason to question the truth of any testimony that it was detectible by human smell. In the present case, I credit the testimony of Trooper Watson that he had prior experience with the odor of both burnt and raw marijuana, and that he smelled a strong odor of what in his experience he knew to be raw marijuana emanating from the defendant’s vehicle which grew significantly stronger when he was in the rear seat area of the passenger compartment. The quantity of marijuana in this case (over twenty pounds packaged in 43 2-pound plastic bags) does not lead me to question the ability of trooper Watson to have made the detection that he testified he did on the basis of his sense of smell.
CONCLUSION
For the above reasons, the defendant’s motion to suppress is DENIED.